## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Jessica Walker, | : | Case No. 1:21-cv-448 |
| | : | |
| *Plaintiff,* | : | Judge Jeffery P. Hopkins |
| | : | |
| vs. | : | |
| | : | |
| The Ohio National Life Insurance | : | |
| Company, | : | |
| | : | |
| *Defendant.* | : | |

---

### OPINION AND ORDER

---

This is a Title VII retaliation case. Plaintiff, Jessica Walker (hereinafter "Plaintiff" or "Ms. Walker"), filed this action against her former employer, The Ohio National Life Insurance Company (hereinafter "Ohio National") alleging retaliation based on her exercising rights protected under Title VII of the Civil Rights Act of 1964. Doc. 14, PageID 49.

Currently before the Court are Ohio National's Motion for Summary Judgment (Doc. 22), Plaintiff's Opposing Memorandum (Doc. 29), and Ohio National's Reply. Doc. 31. In addition to these pleadings, Ohio National and Plaintiff filed Proposed Undisputed Facts ("PUF") (Docs. 22-1 and 30, respectively). In her PUF Response, Plaintiff admits, denies, or seeks to qualify certain facts presented in Ohio National's PUF surrounding the events preceding her termination. Doc. 30. Many of the material facts set forth in both PUFs, however, are undisputed.

For the reasons that follow, the Court **GRANTS** Ohio National's Motion for Summary Judgment (Doc. 22.) and **DISMISSES** Plaintiff's Amended Complaint (Doc. 14) **WITH PREJUDICE**.

## I.    BACKGROUND

This case arises out of Plaintiff's disagreement with her termination from Ohio National. *See* Doc. 14. Plaintiff is a self-described "attorney, with an L.L.M. in Business and Taxation, who is licensed to practice law in the State of Ohio." *Id.* at PageID 47. Plaintiff was employed for five years with Ohio National from July 2012 until her termination in July 2017. *Id.* Plaintiff worked in Ohio National's "advanced planning department" as a "senior advanced sales consultant." *Compare* Doc. 22-1, PageID 1322 ¶ 1 *with* Doc. 30, PageID 1412 ¶ 1. At the time Plaintiff worked for Ohio National, the advanced planning department consisted of one CPA, Kelly Hall ("Ms. Hall"), and three advanced sales consultants all of whom were lawyers, including Plaintiff, Adam Curry ("Mr. Curry"), and Jenna Washatka ("Ms. Washatka"). *Id.* These four employees all reported to David Szeremet ("Mr. Szeremet"), the head of the advanced planning department. *Id.*

Throughout her employment, Plaintiff and Mr. Szeremet did not always see eye-to-eye. As early as 2015, Mr. Szeremet counseled Plaintiff to stop treating him with disrespect. *Compare* Doc. 22-1, PageID 1323 ¶ 3 *with* Doc. 30, PageID 1412 ¶ 3. One example of what Szeremet was referring to occurred in February of 2015. In that example, Plaintiff refused to cancel a department-wide meeting that she unilaterally scheduled, despite repeated requests by Mr. Szeremet to cancel the meeting. *Id.* ¶ 4. Mr. Szeremet told Plaintiff when the incident occurred that "you're refusing to follow my instructions. As the head of the advanced sales department, I'm instructing you to cancel the meeting. . .this is not up for discussion." *Id.* Dissatisfied with Mr. Szeremet's directive, Plaintiff brought the matter to the attention of Ohio National's Vice President of Human Resources, Pam Webb ("Ms. Webb"). *Id.*

According to Plaintiff, Ms. Webb informed her that her communications with Mr. Szeremet had been "disrespectful." *Id.* Only after holding a conversation with Ms. Webb from the human relations department did Plaintiff finally cancel the meeting that her boss had instructed her to cancel.  Plaintiff admitted in testimony that this "would have been a few days" after Mr. Szeremet's final instruction and previous requests. *Id.*

Tensions among Plaintiff, Mr. Szeremet, and the rest of the Advanced Planning Department continued to escalate in 2017.  In the spring of 2017, Plaintiff sent emails to Ms. Webb, Mr. Szeremet's boss Karl Kreunen ("Mr. Kreunen"), and Mr. Kreunen's boss Chris Calabro ("Mr. Calabro"), accusing Mr. Szeremet of bullying her by reminding Plaintiff that she had a negative personal time off or "PTO" balance. *Compare* Doc. 22-1, PageID 1325 ¶ 11 *with* Doc. 30, PageID 1413 ¶ 11. Ms. Webb, as Ohio National's Vice President of Human Resources, later responded to Plaintiff informing her that Mr. Szeremet's concerns about her use of PTO were legitimate and did not constitute bullying. *Id.*

Also in the spring of 2017, Plaintiff's coworkers began complaining to Mr. Szeremet that she had become "combative and unfriendly" and that they did not like working with her. *Compare* Doc. 22-1, PageID 1325 ¶ 12 *with* Doc. 30, PageID 1413 ¶ 12. Plaintiff began to question Ms. Washatka's use of PTO and other leave in comparison to her own, citing concerns about Ms. Washatka's leave usage dating back to 2015. *Id.* ¶ 13. Plaintiff was upset that she and Mr. Curry, the other licensed attorney in the group, did not receive two-weeks PTO when they started at Ohio National, but Ms. Washatka did. *Id.*  Plaintiff concedes knowing that Ms. Washatka was given the two-weeks PTO because she, unlike Plaintiff and Mr. Curry, did not have her law license when she began working at Ohio National. *Id.* ¶ 14. Plaintiff testified that she "always had an issue with" Ms. Washatka being given the two-

3

weeks PTO, as well as an issue with Ms. Washatka receiving the "90 days of FMLA maternity leave that she had not yet earned." *Id.* ¶ 15. Plaintiff testified that she began watching Ms. Washatka and "collected evidence" about her time off work, which Plaintiff kept track of through a calendar. *Id.* Plaintiff showed Mr. Szeremet and Ms. Webb the calendar, both of whom told Plaintiff that she was not Ms. Washatka's manager, and that it was not her job to monitor Ms. Washatka's PTO usage. *Id.* ¶ 16. Plaintiff admits that Ms. Webb viewed her calendar tracking as a form of harassment against Ms. Washatka. *Id.* ¶ 17. Despite all the above, the gravamen of the dispute that this Court must resolve largely centers around what happened over next few days.

On July 25, 2017, Mr. Szeremet informed Plaintiff and the rest of the Advanced Planning Department about a modified (but still full-time) work schedule they were *considering* trying out on Ms. Washatka, who had recently returned from maternity leave. *Compare* Doc. 22-1, PageID 1326 ¶ 18 *with* Doc. 30, PageID 1413 ¶ 18 (emphasis added). Plaintiff told her immediate supervisor, Mr. Szeremet, that she had questions about the modified schedule contemplated for Ms. Washatka, but that she would not speak with him about her concerns. *Id.* In keeping with her word, Plaintiff proceeded to go above Mr. Szeremet's head. And on July 25, 2017, Plaintiff sent an email to other senior managers at Ohio National including, Ms. Webb, Mr. Kreunen, and Mr. Kreunen's boss, Mr. Calabro. *Id.* Plaintiff's email indicated that Ms. Washatka was receiving "special treatment," which she believed was "discriminatory [and] unfair," although Plaintiff admits that she did not tie her grievance to any protected class. *Id.* ¶ 22. After Mr. Kreunen reviewed the email, on July 25, 2017, he informed Plaintiff that he preferred to first have a conversation with her alone. Plaintiff

insisted, however, on including human resources and the legal department in the discussion. *Id.* ¶ 23.

Yielding to her insistence, on July 26, 2017, Mr. Kreunen informed Plaintiff that he would schedule a meeting for July 28, 2017, with Plaintiff, human resources, and the legal department. Doc. 22-1, PageID 1328 ¶ 23 *with* Doc. 30, PageID 1414 ¶ 23. But Mr. Kreunen also told Plaintiff that he would not discuss another employee's work–related activity with her. After hearing this from Kreunen and learning that Ohio National's senior managers were waiting to address her concerns at the July 28 meeting, Plaintiff fired off another email to Mr. Kreunen, copying Mr. Curry, the other licensed attorney on the team. *Id.* ¶ 26. Within 30 minutes of receiving that email, Curry responded individually to Mr. Kreunen stating "I want no part of this. If I have questions or want to participate. . . I will direct my questions to David Szeremet or you." *Id.* ¶ 27.

Like Mr. Kreunen, Ms. Webb advised Plaintiff that she needed to first have a discussion with Mr. Szeremet or Mr. Kreunen regarding the concerns expressed in her July 25, 2017, email. Doc. 17-13, PageID 578. However, on July 27, 2017, Plaintiff still insisted on including human resources and the legal department in those discussions because in her words, she was "having trouble seeing how this [inquiry regarding Ms. Washatka's modified schedule] isn't legal in nature." *Compare* Doc. 22-1, PageID 1328 ¶ 24 *with* Doc. 30, PageID 1414 ¶ 24. In her July 27, 2017, email response to Ms. Webb and Mr. Kreunen, Plaintiff attached U.S. Equal Employment Opportunity Commission ("EEOC") materials regarding compensation. Doc. 17-12, PageID 571. Plaintiff testified that her July 27, 2017, email was the first time she referenced the EEOC. Doc. 21, PageID 1057.

The following day, on Friday July 28, 2017, Plaintiff's previously scheduled meeting with Ohio National's senior managers took place. *Compare* Doc. 22-1, PageID 1330 ¶ 34 *with* Doc. 30, PageID 1415 ¶ 34. Among those in attendance was Mr. Szeremet, Mr. Kreunen, Ms. Webb, and Therese McDonough ("Ms. McDonough"), Ohio National's Vice President of Legal. *Id.* However, unbeknownst to the Ohio National managers gathered for the July 28 meeting, Plaintiff was secretly recording their conversation, during which time Ms. Webb told Plaintiff "[t]here's no reasonable basis that we are violating any laws." *Id.* ¶ 36. The meeting concluded after Plaintiff was asked if she was "currently alleging that [Ohio National is] violating the law," to which Plaintiff replied, "No. Not at this time." *Id.* ¶ 37. On the following Monday, July 31, 2017, Plaintiff was terminated by Ohio National. *Id.* ¶ 38. On the heels of her firing, Plaintiff filed this action asserting that Ohio National retaliated against her for engaging in protected activities in violation of Title VII.

## II.    STANDARD OF REVIEW

Ohio National now seeks an order from this Court granting summary judgment to dismiss Plaintiff's claim of retaliation under Title VII.    "The 'party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'"    *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

But the non-moving party cannot defeat summary judgment merely by pointing to any factual dispute.    Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

6

requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (bracket and emphases omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).  In other words, the dispute must be "genuine" (*i.e.*, supported by evidence) and go to a "material fact" (*i.e.*, a fact that could matter to the outcome).

In sum, after reviewing the cited evidence, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury.  *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).  In making that determination, though, the Court must view the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

## III.    LAW AND ANALYSIS

Plaintiff alleges that Ohio National terminated her in violation of Title VII. Doc. 14, PageID 48. Specifically, Plaintiff alleges that she was retaliated against for opposing the modified work schedule offered to another female coworker who had recently returned from maternity leave. *Id.* Plaintiff alleges that she "threaten[ed] to contact the EEOC if [Ohio National] implemented its modified work schedule program and did not offer the program to all similarly-situated employees. . . because it was potentially discriminatory on the basis of sex." *Id.* Ohio National argues that summary judgment is warranted because Plaintiff's allegations regarding the modified work schedule are not afforded Title VII protected status. Doc. 22, PageID 1301. And in any event, according to Ohio National, it terminated Plaintiff

7

not because she opposed any employment practice but "because, despite past warnings, [Plaintiff] treated her supervisors disrespectfully, was unwilling to work with her supervisors, and disrupted the department." *Id*. The Court will address each of these arguments in turn.

### A. Title VII Retaliation

Title VII makes it an "unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To give an added measure of protection to see that this important law is carried out, Title VII also prohibits employers from "discriminat[ing] against. . . [an] employee . . . because [the employee] has opposed any [unlawful] employment practice, or because [the employee] has made a charge" that the employer has engaged in an unlawful employment practice. *Id*. § 2000e-3(a). A plaintiff who alleges retaliation in violation of Title VII may establish the claim through direct or circumstantial evidence. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir. 2008). Here, Plaintiff asserts that there is both direct and circumstantial evidence to support her claim of retaliation for opposing a discriminatory employment practice or making a charge of discrimination. Doc. 29, PageID 1400–01.

### i. Plaintiff has not produced direct evidence of retaliation.

"Direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated, at least in part, by unlawful discrimination." *Igwe v. Salvation Army*, 790 F. App'x 28, 34 (6th Cir. 2019) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)). In other words, direct evidence "is proof that . . . compels the conclusion that unlawful discrimination was at least a motivating

factor in the employer's actions." *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) (internal quotations and citations omitted). "Isolated and ambiguous comments are insufficient to support a finding of direct discrimination." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 239 (6th Cir. 2005).

The testimony that Plaintiff relies on as direct evidence does not support such a finding. And if anything, the so-called direct evidence Plaintiff relies upon actually undermines her circumstantial case of discrimination, which requires "but-for" causation. *Id.*; *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020). Plaintiff points the Court to the testimony of her immediate boss's supervisor, Mr. Kreunen, asserting that he made the "decision to terminate Plaintiff's employment because she complained of discrimination in that [July 28, 2017,] meeting." Doc. 29, PageID 1401. According to Plaintiff, her opposition to her female coworker, *i.e.*, Ms. Washatka having been offered a modified work schedule, constitutes protected activity. *Id.* However, the testimony upon which Plaintiff relies (and omitted pages leading up to it) demonstrate that Mr. Kreunen had already decided to terminate Plaintiff *before* she made any comments that could be construed as protected activity. *Id.*

Indeed, Mr. Kreunen explicitly testified that he made the decision to terminate Plaintiff a few days *before* their July 28 meeting. Doc. 17, PageID 444–45. According to Kreunen, he went forward with the July 28 meeting because it was previously scheduled, and because it gave Plaintiff a final opportunity to say something that "might change his mind" from firing Plaintiff. *Id.* at 445. In other words, Plaintiff's so-called direct evidence of discrimination is that she was retaliated against because Ohio National **did not** reverse course on its termination decision after the July 28 meeting. Doc. 29, PageID 1400–01. Plaintiff's

argument might prevail if that were the standard; but it is not. Which is to say that Mr. Kreunen's testimony is "not direct evidence because, if believed, [it] do[es] not require the conclusion that unlawful discrimination was at least a motivating factor" in Ohio National's decision to terminate Plaintiff. *Rodriguez-Monguio v. Ohio State Univ.*, 499 F. App'x 455, 460 (6th Cir. 2012).

> ### ii. Plaintiff also has not produced sufficient circumstantial evidence of retaliation.

Given the lack of proof substantiating Plaintiff's claim of direct evidence of Title VII retaliation, Plaintiff must rely on circumstantial evidence and the *McDonnell Douglas* burden-shifting framework in order to make out a *prima facie* case. *Salvation Army*, 790 F. App'x at 34. Under this framework, Plaintiff must show four elements: 1) she engaged in activity protected under Title VII; (2) Ohio National knew that she exercised her protected rights; (3) an adverse employment action was subsequently taken against her; and (4) Plaintiff's alleged protected activity was the "but-for" cause of her termination. *Kenney*, 965 F.3d at 448.

If Plaintiff meets all four elements, she will have established her *prima facie* case of retaliation. *Kenney*, 965 F.3d at 448. The burden will then shift to Ohio National to articulate a legitimate nondiscriminatory reason for Plaintiff's termination. *Id.* If Ohio National carries its burden, Plaintiff must show that the justifications offered by Ohio National were not true but were a pretext for discrimination—a burden she can meet by showing that the proffered reason "(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Plaintiff and Ohio National's disagreement over the facts present relates to the first, second, and fourth elements of the *prima facie* case Plaintiff must elicit to survive summary judgment.

Ohio National would have the Court believe that Plaintiff's complaints regarding the modified work schedule of her coworker do not amount to protected activity, *i.e.*, they are not afforded Title VII protection. Doc. 22, PageID 1301. Ohio National further argues that Plaintiff cannot establish but-for causation or pretext because it made the decision to terminate her well before she made any comments that could be construed as protected activity. In any event, according to Ohio National, the company terminated Plaintiff for continually being disrespectful and insubordinate, and continually disrupting the work environment. *Id.* Naturally, Plaintiff has a different take on both the evidence and the law. She argues that her complaints are protected under Title VII, and that Ohio National's contention that it made the termination decision before she complained about her coworker receiving special treatment is "unsupported by fact." Doc. 29, PageID 1407. The Court will address each of these arguments in order.

> ### a. Plaintiff's complaints are not protected activity under Title VII.

Ohio National argues that the complaints Plaintiff made about her female coworker's modified (but still full-time) work schedule were unreasonable and did not constitute protected under Title VII. Ohio National points first to the fact that "[Plaintiff] and her other coworkers, both male and female, were not offered the modified work schedule[.]" Plaintiff does not dispute this fact. Doc. 22, PageID 1311; *Compare* Doc. 22-1, PageID 1328 ¶ 27 *with* Doc. 30, PageID 1414 ¶ 27. Second, Ohio National argues that as an attorney, Plaintiff could not reasonably believe "that conduct that affected members of protected and unprotected classes alike was unlawful sex discrimination." *Id.* at PageID 1312. Plaintiff argues in response that she was not required to show that the modified schedule was *actually* unlawful for her retaliation claim to withstand summary judgment. Doc. 29, PageID 1400–01.

Although Plaintiff's assertion may hold some truth, it does not substantiate *her* claim under the applicable law. "[T]o come within the protection of Title VII, [Plaintiff] must establish that [she] challenged an employment practice that [she] **reasonably** believed was unlawful." *Yazdian v. ConMed Endoscopic Technologies, Inc.*, 793 F.3d 634, 645 (6th Cir. 2015) (emphasis added). Of critical import here is that an employee's reasonable belief involves "**objective and subject components**." *Yazdian*, 793 F.3d at 645 (emphasis added). That is, the employee must "actually believe[] that the conduct complained of constituted a violation of relevant law," and "a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee" would believe that the conduct complained of was unlawful. *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 2015 WL 3404658, at *11 (6th Cir. 2015) (internal quotation marks omitted) (interpreting the reasonable-belief requirement of the Sarbanes-Oxley Act's anti-retaliation provision).

Protected activity has included "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). Title VII does not protect an employee, however, if her opposition is merely a "vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge. . . simply by an employee inserting a charge of discrimination. In our view, such would constitute an intolerable intrusion into the workplace." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989). *See Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (finding the plaintiff did not engage in protected activity because his statements to his manager were too ambiguous to amount to an opposition of an unlawful employment practice); *see also Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (finding that although it was "clear"

12

that the plaintiff "felt he had been treated unfairly," his letter did not constitute protected activity because a "general complaint of unfair treatment does not translate into a charge of illegal age discrimination.")

As earlier noted, Plaintiff admits that her July 25, 2017, email to Ms. Webb, Mr. Kreunen, and Mr. Calabro complaining that Ms. Washatka was receiving "special treatment," which she believed was "discriminatory [and] unfair" did not mention any protected class. *Compare* Doc. 22-1, PageID 1327 ¶ 22 *with* Doc. 30, PageID 1414 ¶ 22.

Given these facts, Ohio National argues that Plaintiff's conduct is not covered by Title VII. According to Ohio National, "simply mentioning the EEOC" in her July 27, 2017, email and "ma[king] vague statements during the [July 28, 2017,] meeting about gender and motherhood" does not constitute protected activity. Doc. 22, PageID 1314–15. Also, according to Ohio National, because the "alleged favoritism affected legally protected and unprotected classes alike," the company "could not have understood that [Plaintiff's] complaint related to. . . unlawful sex discrimination[.]" Doc. 22, PageID 1312. Finally, Ohio National contends that Plaintiff should have known that her complaints about a coworker did not give rise to a claim of retaliation because "a reasonable lawyer would not believe that conduct that affected members of protected and unprotected classes alike was unlawful sex discrimination." *Id.* Plaintiff counters by arguing that she "had a good faith belief that [Ohio National's] practices were in violation of Title VII" because she is "not an employment or civil rights lawyer." Doc. 29, PageID 1400–01.

The Court finds that Plaintiff's conduct regarding her female coworker's modified schedule is not protected activity under Title VII. The Court takes Plaintiff at her word, especially her expressions that she "always had an issue" with her coworker Ms. Washatka.

13

*Compare* Doc. 22-1, PageID 1326 ¶ 15 *with* Doc. 30, PageID 1414 ¶ 15. It is clear from Plaintiff's admissions (and her filing this action) that she was dissatisfied with what she described as Ms. Washatka receiving "special treatment." *Id.* at ¶ 22. However, in the context of this case, Plaintiff's complaints about Ms. Washatka's work schedule made to Ohio National managers do not amount to kind of activities that are protected under Title VII. In this Court's view, no reasonable person—to say the least an attorney—could "actually believe" that offering a modified (but still full-time) schedule to one female coworker, when the same schedule was not available to both men and women, constitutes sex discrimination. *Rhinehimer*, 2015 WL 3404658, at *11. Under the circumstances, Plaintiff did not engage in any form of protected activity by complaining about her coworker's alleged "special treatment," in the face of the lack of any proof being offered to show that she or any of her male coworkers had been the subject of any unlawful discrimination. Plaintiff has failed to establish the first element of her *prima facie* case—that she engaged in activities protected by Title VII. As such, her retaliation claim fails as a matter of law. *Kenney*, 965 F.3d at 448.

> **b.      Even if Plaintiff's complaints about a coworker constituted protected activity under Title VII, her claim still fails because she cannot demonstrate but-for causation or pretext.**

Even if Plaintiff's conduct—complaining about a coworker being considered for an alternative full-time work schedule—could be characterized as protected activity under Title VII, the claim still fails because Plaintiff cannot establish the "but-for" causation of her *prima facie* case or demonstrate that Ohio National's stated reason was pretextual under *McDonald Douglas*. Here again, Plaintiff relies heavily on temporal proximity as the basis of her claim of retaliation. She contends that including the EEOC materials that she sent to Ms. Webb and Mr. Kreunen about compensation on Thursday, July 27, 2017, along with the comments she

14

expressed during the meeting on Friday, July 28, 2017, all show a causal connection between her termination and alleged protected activity. Doc. 29, PageID 1403–08. According to Plaintiff, the events that took place on July 27th and July 28th were the real reasons for her termination and Ohio National's stated reasons—Plaintiff's continual disruption of the work environment, disrespect her manager, insubordination, and breaching the chain of command—were merely a pretext. *Id.* Ohio National counters by arguing that both Plaintiff's causation and pretext arguments fail because it made the decision to terminate Plaintiff *before* the events of July 27th and July 28th. Doc. 22, PageID 1306–07 (emphasis added).

The Supreme Court's ruling in *U. of Texas S.W. Med. Ctr. v. Nassar* is instructive here. *Nassar* established that Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lesser causation test stated in 42 U.S.C. § 2000e–2(m). *See* 570 U.S. 338 (2013). Under *Nassar*, plaintiffs now must prove that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 360. Otherwise, as the Supreme Court explained, "an employee who knows that he or she is about to be fired. . . [t]o forestall that lawful action, . . . might be tempted to make an unfounded charge of racial, sexual, or religious discrimination; then, when the unrelated employment action comes, the employee could allege that it is retaliation." *Id.* at 359; *see also Wheelwright v. Clairol, Inc.*, 770 F. Supp. 396, 401 (S.D. Ohio 1991) ("[W]e find that the timing of the plaintiff's discharge alone does not establish a causal

connection, where the plaintiff was repeatedly warned. . . and told he would be discharged if his performance did not improve.")[1]

Along these same lines, the Sixth Circuit has repeatedly stated that "we require more evidence than temporal proximity to support an inference of but-for causation." *Bush v. ProMedica Toledo Hosp., Inc.*, No. 21-3444, 2022 WL 221639, at *4 (6th Cir. Jan. 26, 2022) (citing *Kenney*, 965 F.3d at 448–49). There are exceptions to the rule, but the Sixth Circuit has made clear that they "are rare, **even in instances involving relatively short time periods**." *Kenney*, 965 F.3d at 449 (emphasis added). The Sixth Circuit has also said that an "employee is not protected [under Title VII] when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Booker*, 879 F.2d at 1313 (citing *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir. 1985)). The requirement that the workplace environment not be disrupted has been deemed not to violate Title VII because in those "instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of [her] job. . . it renders [her] ineffective in the position for which [s]he was employed[.]" *Id.*

The record before this Court demonstrates that Plaintiff's conduct falls squarely within the type of disruptive employee behavior contemplated by the Supreme Court and Sixth Circuit cited. As discussed, Plaintiff had ongoing issues with Mr. Szeremet and Ms. Washatka

---

[1]As stated, Mr. Szeremet previously issued Plaintiff a formal reprimand, which stated that "[y]our communication with me has been disrespectful and has shown an unwillingness to follow instructions. . . [y]our performance must improve in these areas. This disciplinary action is being taken with the expectation that you will be respectful of your supervisor." *Compare* Doc. 22-1, PageID 1324 ¶ 5 *with* Doc. 30, PageID 1412 ¶ 5. Despite Mr. Szeremet acknowledging in Plaintiff's 2015 year-end evaluation that she had shown improvement, Mr. Szeremet noted that she needed to "communicate in a positive and respectful manner, [and] [b]e cognizant of word choices and tone of communication" in her 2016 year-end evaluation. *Id.* ¶ 7.

dating back to 2015. *See supra*, Section I. A few months after Ms. Webb informed Plaintiff that her behavior toward Mr. Szeremet had been disrespectful, Mr. Szeremet issued Plaintiff a formal "disciplinary action. . . taken with the expectation that [Plaintiff] will be respectful of [her] supervisor[s]." *Id.* Despite those warnings, Plaintiff continued to exhibit disrespectful behavior towards her boss and, without authorization, to track Ms. Washatka's PTO use through a calendar, which Ms. Webb viewed as a form of harassment. *Id.* In addition, instead of raising her concerns about her perception that Ms. Washatka's was receiving "special treatment" with her immediate boss, Mr. Szeremet,[2] as she had been directed, Plaintiff decided unilaterally to break the chain-of-command by addressing this issue directly with Mr. Kreunen and his boss, Mr. Calabro. *Id.*

Mr. Kreunen's testimony that he decided to terminate Plaintiff *before* her July 27, 2017, email to him and *before* the July 28, 2017, meeting is unrefuted. Doc. 17, PageID 443–45. Indeed, "**the final straw**" on Kreunen's decision to terminate came when Plaintiff insisted on convening a meeting with the senior managers over her coworker's employment history after being told the matter was closed. Doc. 17, PageID 443–44 (emphasis added). Given these facts, it is clear that Ohio National's decision to terminate Plaintiff was predicated on her disruptive conduct and not any protected activity.

Plaintiff's remaining arguments regarding causation and pretext are just as easily disposed of. *See supra*, Section III.A.ii.a. Plaintiff's contention that she was "terminated within

---

[2] Mr. Szeremet testified that his attempt to meet with Plaintiff individually on July 25, 2017, *i.e.*, before the July 27 and July 28 events that Plaintiff claims prompted her termination, "lasted probably a minute and a half because she didn't want to talk to me." Doc. 17, PageID 307. At that point, Mr. Szeremet testified that he went to his supervisor and said "Karl [Kreunen], I can't. We're at the point now where [Plaintiff] won't talk to me. She rarely meets with me. She won't loop me in on important work matters. **This is not a workable relationship any longer**". *Id.* (emphasis added).

a few days of. . . voic[ing] her concerns about gender discrimination," without more, fails to show unlawful retaliation under Title VII. Doc. 29, PageID 1404. In an effort to show retaliation, Plaintiff relies heavily on the Sixth Circuit's decision in *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004). Plaintiff argues that her termination qualifies as a "certain distinct case" where the closeness in time "permit[s] an inference of retaliation[.]" *Id.* Plaintiff's heavy reliance on *DiCarlo*, however, is misplaced. Unlike Plaintiff here, "[i]t [was] clear that DiCarlo [the plaintiff in that case] engaged in protected activity." 358 F.3d at 420. The *DiCarlo* plaintiff met with an EEOC counselor to discuss the disparate treatment he was experiencing in the workplace, **which led him to file** a complaint with the EEOC office alleging discrimination based upon national origin, age, and disability as well as retaliation—activities which are clearly protected under Title VII. *Id.* at 413.

Here, Plaintiff claims merely that her coworker, also a member of a protected class, received "special treatment" not offered by Ohio National to any other employees, male or female. This "special treatment" includes two weeks of PTO to study for the bar exam before starting work at Ohio National and the potential that the coworker might be offered a modified (but still full-time) schedule after giving birth—management decisions that Plaintiff opposed, but which do not amount to unlawful employment practices actionable under Title VII, especially when the evidence of Plaintiff's insubordination supporting her termination was so overwhelming. Moreover, *DiCarlo* relied on the outdated lower "causal connection" standard to establish a *prima facie* case, rather than the more recent heightened "but-for" causation established by the Supreme Court. *Compare Nassar*, 570 U.S. 338 *with DiCarlo*, 358 F.3d 408. Contrary to Plaintiff's assertions, this case is not one of those "rare instances," *Kenney*, 965 F.3d at 449, that justifies an exception to the "require[ment] [of] more evidence

than temporal proximity to support an inference of but-for causation" on the record now before the Court. *ProMedica Toledo Hosp., Inc.*, 2022 WL 221639, at *4.

Finally, Plaintiff argues that Ohio National's assertion that it made its termination decision before she complained about a purported violation of Title VII is "unsupported by fact." Doc. 29, PageID 1391. Plaintiff argues that since the decision was not documented by "email" or some other medium "in this age of digital communications," that that, "in and of itself, would permit a reasonable finder of fact to conclude" that Ohio National made its decision *after* she began to complain. *Id.* Plaintiff's argument conflates the absence of evidence as evidence of retaliation—an obligation under *McDonald Douglas*—that Plaintiff still has the burden of shouldering. In other words, Plaintiff incorrectly asserts that Ohio National's failure to produce digital evidence of its termination decision is proof in and of itself that the decision was predicated on a discriminatory reason. But that is not the standard; and by making that argument, Plaintiff openly disregards her burden at the summary judgment stage.

As noted at the outset, as the non-moving party Plaintiff cannot defeat summary judgment merely by pointing to *any* factual dispute. *See supra*, Section II. The factual dispute must be material, and the proof offered must demonstrate that Plaintiff's allegations of retaliation in violation of Title VII are supportable through direct or circumstantial evidence. *Imwalle*, 515 F.3d at 543. Plaintiff's argument is unpersuasive in this context because "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *City of Troy*, 974 F.3d at 697 (bracket and emphases omitted) (quoting *Anderson*, 477 U.S. at 247–48). In other words, the dispute must be "genuine" (*i.e.*,

19

supported by evidence) and go to a "material fact" (*i.e.*, a fact that could matter to the outcome).

There is no such genuine factual dispute here. To be sure, Plaintiff's testimony extinguishes all controversy. When asked explicitly by Ohio National whether it was true that she didn't "know when the Company decided to terminate [her] employment," Plaintiff testified "**[t]hat is correct**." Doc. 17, PageID 250 (emphasis added). This evidence coupled with Kreunen's uncontroverted testimony that "[a]gain, [Plaintiff] not working with [her] management, showing disrespect. But then this third aspect appearing [unilaterally involving her coworkers Adam Curry and Kelly Hall after being told the matter was closed], **was for [him] the final straw**" clearly shows that the decision to terminate Plaintiff was made on July 26, 2017—before the so-called July 27 or 28 protected activities she so heavily depends on. Doc. 17, PageID 443–44 (emphasis added).

After reviewing all the facts and circumstances surrounding Plaintiff's termination, including those leading up to that decision by Ohio National's senior management, the Court finds that this case does not present a "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). At bottom, the evidence supports Ohio National's decision to terminate Plaintiff for insubordination and disruption of the workplace. And that decision was not predicated on retaliation against Plaintiff for engaging activities protected under Title VII.

## IV.     CONCLUSION

For the reasons stated, the Court **GRANTS** the Motion for Summary Judgment of Ohio National (Doc. 22) and **DISMISSES** Plaintiff's Amended Complaint (Doc. 14) **WITH**

PREJUDICE. The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE**

this matter from the docket.

**SO ORDERED**

September 30, 2024

Jeffery P. Hopkins
United States District Judge